# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

**UNITED STATES OF AMERICA**                    **CASE NO. 2:10-CR-00292-01**

**VERSUS**                                       **JUDGE JAMES D. CAIN, JR.**

**DOUGLAS EDWARD FORD (01)**          **MAGISTRATE JUDGE PATRICK J. HANNA**

## MEMORANDUM ORDER

Before the Court is a "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)" (Doc. 42) wherein Defendant, Douglas Edward Ford moves to reduce his sentence based on "extraordinary and compelling reasons." The Government has not opposed the motion.

## INTRODUCTION

On March 9, 2011, Ford plead guilty to Bank Robbery [18 U.S.C. § 2113(a)]; in total, Ford committed twelve (12) robberies. (Doc. 22, Plea Agreement). No guns were involved in the robberies, only the passing of notes asking the teller to hand over money. Id.; See PSR at ¶ ¶ 126-127. On October 31, 2011, Ford was sentenced to 240 months imprisonment;[1] Ford has been incarcerated since September 3, 2010. Ford's anticipated release date is September 18, 2027.[2]

---

[1] According to the PSR, Mr. Ford's sentencing range under the U.S. Sentencing Guidelines for these 12 offenses would have been 151-188 months. Based on the Career Offender Guideline and a 3-point reduction due to acceptance of responsibility, Ford had a Total Offense Level of 29 and a Criminal History Category of VI. See PSR at ¶ 122.

[2] See https://www.bop.gov/inmateloc/

## LAW AND ANALYSIS

A judgment, including a sentence of imprisonment, "may not be modified by a district court except in limited circumstances." *Dillon v. United States,* 560 U.S. 817, 825 (2010). Under 18 U.S.C. 3582(c), a court generally may not modify a term of imprisonment once it has been imposed, except in three circumstances; (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A); (2) to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

Section 3852(c)(1)(A) permits a court to reduce a prisoner's sentence "if he finds that" (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

Prior to 2018, only the Director of the BOP could file these kinds of compassionate release motions. In 2018, Congress passed, and President Trump signed the First Step Act, which among other actions, amended the compassionate release process. Under the First Step Act, § 3582(c)(1)(A) now allows prisoners to directly petition courts for compassionate release.

Section 3582(c)(1)(A) provides that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C, § 3582(c)(1)(A). Here, the applicable policy statement, U.S.S.G. § 1B1.13, provides that a

court may reduce the term of imprisonment after considering the § 3553(1) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or the community, as provided in 18 US.C. § 3142(g); and (iii) "the reduction is consistent with this policy statement."[3] U.S.S.G. § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (1) suffering from a serious physical or medical condition, (2) suffering from a serious functional or cognitive impairment, or (3) experiencing deteriorating physical mental health because of the aging process, any of which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).

The application note also sets forth other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the

---

[3] The policy statement refers only to motions filed by the BOP director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). See first Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239. In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 35829c)(2)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

possibility that the BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

The BOP has issued a regulation to define its own consideration of compassionate release requests. See BOP Program Statement 5050.50.[4] This Program Statement was amended effective January 17, 2019, following the First Step Act's passage. It sets forth in detail the BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases the Sentencing Commission identified: serious medical condition, advanced age, and family circumstances. The policy statement is binding under the express terms of § 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States,* 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory. See *Dillon v. United States*, 560 U.S. 817, 830 (2010) (making clear that the statutory requirement in § 3582 that a court heed the restrictions stated by the Sentencing Commission is binding).

Ford is 56-years old and suffers from Type 2 diabetes, hypertension, hyperlipidemia and an enlarged prostate.[5] Dr. Arnold Seto, a cardiologist certified by the American Board of Internal Medicine in Cardiovascular Disease and Critical Care Medicine, found that Ford's chronic conditions are not well controlled and thus he has an elevated risk of developing coronary artery disease.[6] In addition, diabetes and hyperlipidemia increase

---

[4] Available at https://www.bop.gov/policy/progstat/5050_50EN.pdf .
[5] See Defendant's exhibit 2, BOP Medical Records at 1-2.
[6] See exhibit 3, Expert Declaration of Dr. Seto at ¶ 11.

Ford's risk of heart attack and stroke, and diabetes can lead to kidney disease, blindness, and peripheral vascular disease.[7]

Ford contracted COVID-19 which further complicates his health condition.[8] Ford has recovered from the virus but continues to have shortness of breath and difficulty breathing.[9] According to Dr. Seto, "we are still learning about the lasting effects of COVID-19" and Ford may have "uncertain long-term cognitive and pulmonary consequences of his illness."[10] Despite being vaccinated, because of his underlying condition of Type 2 diabetes, Ford remains vulnerable to new COVID-19 variants and is at a greater risk of severe illness or death if he were to re-contract the virus.[11]

Ford maintains that he has demonstrated exceptional rehabilitation. He has worked for UNICOR for over four (4) years where he has risen through the ranks to his current position of Quality Assurance/Document Control Clerk overseeing the supply chain and is "heavily involved in every area of our factory."[12]

Ford has also furthered his education while being incarcerated: (1) B.S. in Business Administration (at his own expense) graduating with honors;[13] (2) 480 hours of culinary arts; (3) classes in personal finance; (4) Spanish; and (5) parenting.[14] Ford's teachers state that Ford has a "positive attitude and desire to be a better citizen in the future," [15] and he

---

[7] Id. at ¶ 12.
[8] Defendant's exhibit 3, Seto Declaration, ¶ 16; BOP Medical Records at 3.
[9] See exhibit 4, Douglas Ford Declaration, ¶ 15.
[10] Defendant's exhibit 3, Seto Declaration ¶ 17.
[11] Defendant's exhibit 3, Seto Declaration, ¶ ¶ 19-20.
[12] See exhibit 5, Letters from UNICOR Supervisors, Robbie Gill, Kevin Rewis.
[13] Defendant's exhibit 6, College Education Certificates.
[14] Defendant's exhibit 7, BOP Certificates; exhibit 8, Inmate Education Data Transcript, and BOP Sentry Records.
[15] Defendant's exhibit 9, Letter from T. Johnson, Teacher (Mar. 4, 20210).

understands that the education and employment skills he has gained "will allow him to gain meaningful employment in the future."[16]

Ford consistently demonstrated "a high level of eagerness to learn and assist staff and inmates on a daily basis."[17] He has also served as an inmate tutor, inmate suicide companion, an education department tutor, and an inmate clerk in the library.[18] Ford has zero inmate infractions and not one incident of discipline while incarcerated.[19]

In August 2020, the BOP assessed Ford as a "minimum" recidivism risk—the lowest level of recidivism risk—and he is recommended for a possible decrease in custody level.[20]

Ford seeks a modification of sentence based on extraordinary and compelling reasons, specifically, his deteriorating health and continued high risk to COVID-19 and its variants, and his remarkable consistent rehabilitation.

In the context of compassionate release, courts have recognized the risk of future complications to an inmate's health from having contracted COVID-19. *United States v. Harris,* 2020 WL 7828771, at *10 (D.Md. Dec. 30, 2020) (stating that "it remains uncertain … whether he will experience ongoing complications from the virus, due to his underlying health conditions or because much is unknown about the long-term effects of the virus"; *United States v. Davidson,* 2020 WL 4877255, at *20 (W.D. Pa. Aug. 20,

---

[16] Defendant's exhibit 9, Letter from S. Workman, Teacher (Mar. 2, 2021).
[17] Defendant's exhibit 5, C. Wingate, Unit Manager.
[18] Defendant's exhibit 5, C. Rieues, Education Supervisors, Letters from UNICOR Supervisors; Exhibit 7, BOP Certificates, exhibit 9, Letters from BOP teachers.
[19] Defendant's exhibit 8, Inmate Discipline Data, BOP Sentry Records.
[20] Id. Inmate Profile and Male Custody Classification Form, BOP Sentry Records.

2020) (granting release and noting that the long-term health impact of having had COVID-19 is no known).

The Court finds that Ford had sufficiently presented extraordinary and compelling reasons that warrant the modification of his sentence, including his current health conditions, the inability to adequately control his chronic health conditions, the long-lasting effects of contracting COVID-19, and the risk for future exposure. The Court is further persuaded by Ford's stellar behavior as a model prisoner, his accomplished goals in receiving an education, his certificates of completion of numerous classes, his work ethic at UNICOR, and his overall reputation among his peers. Accordingly,

**IT IS ORDERED** that the Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 42) is hereby **GRANTED** and the Judgment issued November 4, 2011[21] will be AMENDED to time served, with the Supervised Release and conditions, and Restitution to remain in full effect. Defendant, Douglas Edward Ford is to be released effective when the Bureau of Prisons receives this Order.

**THUS DONE AND SIGNED** in Chambers on this 2nd day of July, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[21] Doc. 25.